IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THERMOLIFE INTERNATIONAL, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 1:15-cv-00894-ELR |
| HI-TECH PHARMACEUTICALS, INC.; AND JARED WHEAT, | ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' MOTION FOR RULE 11 SANCTIONS
AND BRIEF IN SUPPORT**

COME NOW, HI-TECH PHARMACEUTICALS, INC. and JARED WHEAT, Defendants the above styled action and, pursuant to Rule 11 of the Federal Rules of Civil Procedure, hereby move this Court to impose sanctions upon Thermolife International, LLC ("Plaintiff") and its counsel. In Support of this Motion, Defendants respectfully show this Court as follows:

## I.    RELEVANT FACTS

Thermolife International, LLC ("Plaintiff" or "ThermoLife") filed its original

Complaints in these three related patent infringement suits naming Jared Wheat ("Mr. Wheat") as a Defendant.  Dkt. 1 in Civil Action File Nos. 1:15-cv-00892-ELR; 1:15-cv-00893-ELR, and 1:15-cv-00894-ELR (the '892, '893, '894 actions, respectively). Upon information and belief, this is the first occasion on which Plaintiff, who has filed a multitude of patent infringement lawsuits against Hi-Tech and other companies, has sought to impose individual liability upon a corporate officer.  *See generally* Hi-Tech's Counterclaims, Dkt. 10; Exh. A.  In doing so, Plaintiff did not seek the alter ego remedy, but simply named Mr. Wheat as a defendant alleging only, in a conclusory fashion, that "Defendant Jared Wheat is an individual doing business as APS Nutrition and having a business address of 6015-B Unity Dr., Norcross, Georgia."  Dkt. 1, ¶ 3. This was the sole factual allegation underlying Plaintiff's claims against Mr. Wheat as an individual regardless of whether the Plaintiff named Hi-Tech or APS Nutrition as the relevant corporate defendant. *See Id*.

Given the sole allegation against Mr. Wheat in the original Complaints was demonstrably false, Mr. Wheat made a good faith effort to resolve the issue with Plaintiff through Rule 11 correspondence and production of a purchase contract showing that Hi-Tech, not Mr. Wheat, purchased and owns APS Nutrition.  Exh.  F & G to Dkt. 32.  Mr. Wheat further called Plaintiff's attention to the fact that, prior

to the current suits, it had knowledge and information that Hi-Tech, as opposed to Mr. Wheat, did business as APS Nutrition. Exh. F to Dkt. 32, p. 2.  Indeed, more two (2) years ago, Plaintiff instituted patent infringement litigation against Hi-Tech in the Southern District of California, in which Plaintiff's Complaint alleged that, "On information and belief, Defendant [Hi-Tech] also does business as . . . APS Nutrition . . . or manufactures products marketed under such brands." Exh. A, ¶ 7. In its Answer to the Complaint, Hi-Tech admitted the allegation, e.g., "Hi-Tech admits that it does business as . . . APS Nutrition." Exh. B, ¶ 7. Plaintiff, therefore, had been aware for over two years that Hi-Tech does business as APS Nutrition. However, despite this prior knowledge, Mr. Wheat's Rule 11 correspondence, and production of the aforementioned purchase contract, Plaintiff refused to dismiss Mr. Wheat from the cases.  Mr. Wheat, therefore, filed a Rule 11 Motion for Sanctions against Plaintiff and its counsel as well as a Motion to Dismiss.

Instead of responding to these Motions Plaintiff unnecessarily forced Mr. Wheat to file, Plaintiff filed First Amended Complaints in which it seeks to pierce the corporate veil of APS in the '893 action, and the corporate veil of Hi-Tech in the '892 and '894 actions.   Dkts. 52, 84, & 34, respectively ("First Amended Complaints," collectively).  In each of the three First Amended Complaints, Plaintiff again makes the same conclusory allegation that:

3

Defendant Jared Wheat is an individual doing business as APS Nutrition and having a business address of 6015-B Unity Dr., Norcross, Georgia.[1]

Plaintiff's three First Amended Complaints also include three additional factual allegations: one other pertaining to Mr. Wheat and APS Nutrition, and two pertaining to Mr. Wheat and Hi-Tech.[2]  Specifically, Plaintiff added the following allegation concerning APS Nutrition:

> APS Nutrition is not registered to do business in the State of Georgia, and neither Defendant Hi-Tech nor Defendant Jared Wheat have registered "APS Nutrition" as a trade name in Georgia as required by O.C.G.A. § 10-1-490(a).[3]

Plaintiff added the following two factual allegations concerning Mr. Wheat and Hi-Tech:

> Defendant Jared Wheat is the sole owner, president, chief executive officer, secretary, and treasurer of Defendant Hi-Tech and in that capacity Defendant Jared Wheat is personally responsible for the promotion and advertising of the Accused Products. See Fed. Trade Comm'n v. Nat'l Urological Group, Inc., No. 1:04-cv-3294-CAP, Dkt.

---

[1] First Amended Complaints, ¶ 3.  As in its original Complaints, Plaintiff also claims that the manufacturer/distributor defendants, including Mr. Wheat, "conduct [the allegedly infringing] business" in this District, apparently as a factual basis for this Court's jurisdiction.  *Id.*, 5.  Regardless, as explained herein, conducting business, similar to controlling a business, is not a factor in the alter ego analysis.

[2] Notably, Plaintiff's allegations, claims, and accused products are not segregated among the three suits on the basis of whether Hi-Tech or APS Nutrition is the relevant corporate defendant; Plaintiff intertwined all three suits (inconsistent with its position that Hi-Tech and APS are separate entities).

[3] *Id.,* ¶ 4.

4

No. 650 at 7 (N.D. Ga. May, 14, 2014) (Exhibit A)[4];

and

> Jared Wheat, in his individual capacity, has filed trademark applications with the United States Patent and Trademark Office relating to the Accused Products, in which he listed Hi-Tech's business address as his own, individual address…

Thus, Plaintiff's entire "factual" basis for piercing the corporate veil of APS Nutrition in the '893 action is the allegation that Mr. Wheat does business as APS Nutrition, which Plaintiff knows is false, and the allegation that "APS Nutrition" is not a registered business name. Plaintiff's entire "factual" basis for piercing the corporate veil of Hi-Tech in the '892 and '893 actions is the fact Mr. Wheat owns and operates Hi-Tech, and that he filed a patent application using his business address.

Plaintiff also, without supporting factual allegations, included in its Alter Ego "Cause of Action" the bare and conclusory claim that:

> Jared Wheat has: (1) instructed and authorized the diversion of Hi-Tech's funds in an attempt to evade a judgment entered against Hi-Tech by the United States District Court for the Northern District of Georgia; (2) intermingled Hi-Tech's funds with his personal funds; and (3) failed to maintain an arm's length relationship between Hi-Tech and its related entities. See Ex. A at 19-20.[5]

---

[4] *Id.*, ¶ 7.
[5] First Amended Complaints, ¶¶ 148, 136, & 107 in the '892, '893, & '894 actions, respectively.

The District Court Order referenced, however, relates to an entirely unrelated case which involves different parties, and was vacated, in its entirety, by the Eleventh Circuit. *FTC v. National Urological Group, Inc.,* et al., 14-13131, Opinion Vacating Judgment of District Court, May 5, 2015.  The Order cited is also noticeably devoid of facts or conclusions supporting Plaintiff's claims.  Exh. A to First Amended Complaints, pp. 19-20.  The Order, rather, simply lays out categories of significant assets the Court believed could have been used to pay the judgment – a judgment that has since been satisfied.  *Id*.; *FTC v. National Urological Group, Inc.,* et al., 14-13131.; Opinion Vacating Judgment of District Court, May 5, 2015.

Prior to filing the current Motion, Defendants sent Plaintiff a Rule 11 letter concerning the claims against Mr. Wheat in its First Amended Complaints.  Exh. C. In this letter, Defendants expressed that through litigation experience and/or simple legal research, Plaintiff and its counsel knew or should have known that Plaintiff's allegations were false, misleading, and/or irrelevant and, together, wholly insufficient to pierce the corporate veil of either Hi-Tech or APS Nutrition (since Plaintiff apparently maintains they are separate entities).  *Id*.  Defendants also laid out, in detail, how each of the allegations and claims were false, misleading, and/or irrelevant, citing relevant statutory and common law.  *Id*.

6

Again, however, Plaintiff maintains its refusal to dismiss Mr. Wheat. Defendants, therefore, file the current Motion for Sanctions seeking restitution for the legal fees incurred as well as the legal fees which will be incurred in filing a dispositive motion to have him dismissed, in addition to the cost to prepare and file Amended Answers on behalf of all Defendants, and any other relief the Court deems just and proper.

## II.   ARGUMENT AND CITATION OF AUTHORITY

The Eleventh Circuit has explained that: "Rule 11 is intended to deter claims with no factual or legal basis at all … " *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990).  Rule 11(b) provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if
specifically so identified, will likely have evidentiary support after
a reasonable opportunity for further investigation or discovery . . .

Fed. R. Civ. P. Rule 11(b). Thus, Rule 11 sanctions are appropriate when a party files a pleading that has no reasonable factual basis or the party files a pleading in bad faith for an improper purpose. *Worldwide Primates v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)).[6] In this case, as laid out in detail in Defendants' Rule 11 letter, Plaintiff's claims are objectively frivolous in light of known facts and established law.

## I.  Plaintiff's Attempt to Sue Mr. Wheat Claiming APS Nutrition Is His Alter Ego Is Groundless and Violates Rule 11.

As for ThermoLife's individual factual allegations against Mr. Wheat that relate to APS:

---

[6] In this Circuit, when a Court is confronted with a motion for Rule 11 sanctions, the Court must first determine "whether the party's claims are objectively frivolous-in view of the facts or law-and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry. If the attorney failed to make a reasonable inquiry, then the court *must* impose sanctions despite the attorney's good faith belief that the claims were sound." *Mortensen v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 57570, 4-5 (M.D. Ga. Apr. 24, 2012) quoting *Jones*, 49 F.3d at 695 (citations omitted) (emphasis added).

1.     ThermoLife first alleges, "Defendant Jared Wheat is an individual doing business as APS Nutrition and having a business address of 6015-B Unity Dr., Norcross, Georgia, 30071."[7]

As Mr. Wheat has pointed out for weeks, ThermoLife has direct and documented knowledge that this allegation is untrue.  ThermoLife knows that more than two (2) years ago, it instituted patent infringement litigation against Hi-Tech in the Southern District of California.  See *Thermolife International LLC v Hi-Tech Pharmaceuticals, Inc.,* U.S.D.C. S.D.Cal., Civil Action No. 3:13-cv-00830-JLS-MDD.  In its Complaint in that litigation, Thermolife alleged: "On information and belief, Defendant [Hi-Tech] also does business as . . . APS Nutrition . . . or manufactures products marketed under such brands." *Complaint*, ¶ 7.  In its Answer to the Complaint, Hi-Tech admitted the allegation, *e.g*., "Hi-Tech admits that it does business as . . . APS Nutrition." *Answer*, ¶ 7.  Thus, Thermolife has not only represented to a court that it has information and belief that Hi-Tech does business as APS (which it now contends is a misrepresentation), it saw fit to bring suit against Hi-Tech on that ground.   And, not only has Hi-Tech admitted Thermolife's contention, it has proceeded with defending the lawsuit based upon the APS branded product at issue.  Simply put, ThermoLife has been aware for over two years that

---

[7] First Amended Complaints, ¶ 3.

Hi-Tech Pharmaceuticals, Inc., not Mr. Wheat individually, does business as APS Nutrition.  While counsel for ThermoLife in this case initially represented that they were not aware of the aforementioned allegation and admission in the other lawsuit, Mr. Wheat provided them with the corresponding pleadings, and has repeatedly reminded them of these circumstances since that time.  Moreover, ThermoLife and continue to make allegations which are contradicted by the previously produced purchase contract[8] and their own submissions to the Court.[9]

Finally, as ThermoLife is also aware, a pleading that offers mere labels and conclusions will not do.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, the known falsity of the allegation aside, the general labeling of Mr. Wheat as APS

---

[8] While ThermoLife may disingenuously claim that the contract is ambiguous because the seller is listed as "APS Distribution," and the contract does not specifically mention the name "APS Nutrition," the contract plainly expresses APS Distribution's intent to sell to Hi-Tech all trade and fictitious names.  Under these circumstances, and given ThermoLife's industry knowledge relating to the APS brand (as evidenced by its S.D.Ca. suit), ThermoLife and its counsel cannot accurately contend that the allegation is true to the "best of their knowledge, information, and belief," or that its contention will likely have evidentiary support as required by Rule 11.  Of course, if ThermoLife had bothered to make even a cursory, much less "reasonable," investigation into the issue, it would have been able to independently confirm through a third-party that Hi-Tech purchased the "APS Nutrition" name from APS Distribution.

[9] Exh. A to ThermoLife's First Amended Complaint, p. 20 (stating that the Affiliated Distribution, Inc. was a wholly owned subsidiary of Hi-Tech, that its bank account was an operating account of Hi-Tech, and that "Hi-Tech purchased APS Nutrition.")

Nutrition and the mere conclusion that he does business under that name are an insufficient basis upon which to base a claim against him.

2. ThermoLife also alleges, "APS Nutrition is not registered to do business in the State of Georgia, and neither Defendant Hi-Tech nor Defendant Jared Wheat have registered "APS Nutrition" as a trade name in Georgia as required by O.C.G.A. § 10-1-490(a)."[10]

As set forth above, APS Nutrition would not be properly registered as a legal entity, and there would be no reason for Jared Wheat to register "APS Nutrition" as a trade name for himself – to do so would be nonsensical and improper. Moreover, even if *Hi-Tech* had an obligation to register the name "APS Nutrition" as a trade name, its failure to do so is not a basis for holding Mr. Wheat individually liable. For an officer to be held individually liable for company actions simply because the company failed to register a trade name is illogical, without legal basis, and entirely inconsistent with O.C.G.A. § 10-1-493, which provides that there shall be no civil penalty for a defendant person or corporation's failure to register a trade name. Simply put, ThermoLife knows this allegation is misleading, based upon assumptions it knows to be false, and irrelevant to the alter ego analysis.

Regardless, on August 25, 2015, Hi-Tech executed a Trade Name Registration for "APS Nutrition," which it has submitted to the Gwinnett County Superior Court

---

[10] First Amended Complaints, ¶ 4.

for filing, mooting this issue.  A copy of this notarized Registration is attached as "Exhibit D."

In sum, ThermoLife knows its overly conclusory allegation that Mr. Wheat does business as APS is false, and the mere fact that APS Nutrition name was once unregistered by Hi-Tech is wholly insufficient to state a claim for individual liability against Mr. Wheat.

## II.    Plaintiff's Attempt to Sue Mr. Wheat Wheat Claiming Hi-Tech Is His Alter Ego Is Groundless and Violates Rule 11.

As for ThermoLife's individual factual allegations against Mr. Wheat, which relate to Hi-Tech:

1. ThermoLife goes on to allege, "Defendant Jared Wheat is the sole owner, president, chief executive officer, secretary, and treasurer of Defendant Hi-Tech and in that capacity Defendant Jared Wheat is personally responsible for the promotion and advertising of the Accused Products. See Fed. Trade Comm'n v. Nat'l Urological Group, Inc., No. 1:04-cv-3294-CAP, Dkt. No. 650 at 7 (N.D. Ga. May, 14, 2014) (Exhibit A)."[11]

First, Plaintiff improperly relies upon an Order from an entirely unrelated case, which the Eleventh Circuit vacated in its entirety.  *FTC v. National Urological Group, Inc.,* et al., 14-13131.; Opinion Vacating Judgment of District Court, May 5, 2015; *see U.S. v. Ayers*, 76 U.S. 608, 610 (1869) (to vacate a judgment is to render

---

[11] *Id.*, ¶ 7.

it null and void); *Black's Law Dictionary Free Online Legal Dictionary*, 2nd Ed.
("vacate" is "[t]o annul; to cancel or rescind; to render an act void; as, to vacate and
entry of record, or a judgment").  The Order, therefore, does not constitute proper
evidence or a reasonable basis for any of ThermoLife's allegations or claims.

Second, as provided for by this Court, the Eleventh Circuit, and Georgia's
Supreme Court, Mr. Wheat's status in and his level of control over Hi-Tech do not
provide a justification for piercing of the corporate veil:

> Under Georgia law, a corporation and its shareholders and officers are
> separate, even if one person owns all of its shares and controls its
> actions.  The corporation is not bound by the acts of the owner as an
> individual, and the owner is not bound by corporate acts, even though
> the individual may dictate every corporate decision.

*U.S. v. Fidelity Capital Corp.*, 920 F.2d 827, 836 (11th Cir. 1991) (internal citations
omitted); *Functional Product Trading, S.A., v. JITC, LLC*, 2014 WL 3749213, *6
(July 29, 2014) (sole ownership and control are not factors in the veil piercing
analysis*); Transportation v. McMeans*, 294 Ga. 436, 437 (2014) (ownership and
control of corporation is insufficient to pierce corporate veil).  Thus, any allegation
that Mr. Wheat "conducts business activities" or "oversees" operations would be
similarly insufficient.  Otherwise, every person who is a company's sole shareholder

and officer would be automatically individually liable for the company's actions.[12]

Consequently, this allegation is also irrelevant to the alter ego analysis.

   2.  ThermoLife then alleges, "Jared Wheat, in his individual capacity, has filed trademark applications with the United States Patent and Trademark Office relating to the Accused Products, in which he listed Hi-Tech's business address as his own, individual address …"

First, filing a trademark application in Mr. Wheat's name can hardly be said to be an abuse of the corporate form.[13]  Second, the mere fact that Mr. Wheat utilized Hi-Tech's business address on the application, such that the trademark related correspondence and filings would be sent to him at work, is also not an abuse of the corporate form and does not provide for the imposition of individual liability. *See, e.g., Fidelity*, 920 F2d at 839 (shared address does not provide for piercing of the corporate veil).

In sum, ThermoLife's allegation that Mr. Wheat owns and controls Hi-Tech has no bearing on the alter ego analysis, leaving the name and address on trademark applications as the sole potential basis for Mr. Wheat's liability.  ThermoLife is,

---

[12] Mr. Wheat notes that Mr. Kramer also falls into this category of persons.

[13] Defendants note that Mr. Kramer, who purports to be motivated by protecting ThermoLife's intellectual property, has apparently elected not to register ThermoLife's product names or other trademarks ThermoLife represents it holds on its website and packaging (except "NO3-T," the logo for ThermoLife's "patented nitrate technology").

however, over-reaching in attempting to cast the trademark application as an abuse of the corporate form or otherwise improper which, regardless, is hardly sufficient basis for individual liability.

### III.    Plaintiff's Additional Contentions In Its Alter Ego "Cause of Action" Are Improper and Violate Rule 11.

As for ThermoLife's Alter Ego "Cause of Action":

ThermoLife, <u>with no supporting factual allegations</u>, claims that:

Jared Wheat has: (1) instructed and authorized the diversion of Hi-Tech's funds in an attempt to evade a judgment entered against Hi-Tech by the United States District Court for the Northern District of Georgia; (2) intermingled Hi-Tech's funds with his personal funds; and (3) failed to maintain an arm's length relationship between Hi-Tech and its related entities. *See* Ex. A at 19-20."[14]

This is simply a "throw-in," so to speak, and a thinly-veiled, improperly-motivated effort to get the sanctions Order before the Court.   Indeed, ThermoLife was noticeably unable to include any factual allegations in its Amended Complaints to support these claims.

Moreover, as previously stated, the Order relied upon by ThermoLife has been vacated and cannot therefore provide a reasonable basis for allegations against Mr.

---

[14] First Amended Complaint, 1:15-cv-00892, ¶ 148; First Amended Complaint, 1:15-cv-00893, ¶ 136; First Amended Complaint, 1:15-cv-00894, ¶ 107.

Wheat.  Mr. Wheat further notes that, even if ThermoLife could rely on the Order, ThermoLife's entirely conclusory allegations are not supported by the text of the Order. Indeed, the Order does not evidence, or even imply, that there was an intermingling of funds between Hi-Tech and Mr. Wheat, that Mr. Wheat withdrew funds to evade a judgment against Hi-Tech, or that the withdrawal was in any way improper.  This is, of course, not to mention that the Order, which found Hi-Tech makes tens of millions of dollars on four products alone,[15] gives no indication that Hi-Tech was ever undercapitalized, financially unstable, or insolvent.  If anything, the Order implies that Hi-Tech has many millions of dollars in assets, enabling it to purchase other companies for significant sums and pay Mr. Wheat substantial dividends. The Court simply laid out categories of assets it believed could have been used to voluntarily pay the judgment – a judgment that has now been satisfied.  See *FTC v. National Urological Group, Inc., et al.*, 1:04-CV-3294-CAP, Omnibus Final Disposition Order in Garnishment, Doc. 827, August 11, 2015.

Additionally, Mr. Wheat's provision of money for the purchase of Hi-Tech Nutraceuticals, LLC, a Pennsylvania entity separate and distinct from Defendant Hi-Tech Pharmacuticals, Inc., has absolutely no bearing on piercing the corporate veil of Hi-Tech Pharmaceuticals, Inc. *See e.g. Women's Health Care of Gwinnett, P.C.*,

---

[15] Exh. A to First Amended Complaints, pp. 22-23.

243 Ga. App. 53, 56 (2000) ("[A]lthough there is evidence that Dr. Salviano loaned the corporation money, there is no evidence that she disregarded the corporate form of WHCG or acted as though it was her alter ego."); *see also Nat Katz & Assoc., Ltd. v. Barber*, 255 Ga. App. 207, 209 (2002).

Finally, ThermoLife cites pages 19 and 20 of the Order in support of its vague and conclusory claim that Mr. Wheat "failed to maintain an arm's length relationship between Hi-Tech and its related entities."  Review of those pages, however, reveals the Order simply mentions the mere purchase of companies which, in and of itself, does not constitute an abuse of the corporate form.  Thus, there is nothing in the Order to evidence or imply that Mr. Wheat confused his personal affairs with that of Hi-Tech or that he or abused the corporate form.  The Order ThermoLife baselessly wanted to get before the Court simply does not support ThermoLife's claims which, once again, are nothing but "mere labels and conclusions" contrary to the requirements of *Iqbal*.

**IV.    Plaintiff's Attempt to Sue Mr. Wheat Is Purely Motivated by Bad Faith and Personal Animus as Opposed to Legitimate Grounds for Individual Liability.**

As set forth above, the allegations against Mr. Wheat are: (1) known by Plaintiff to be false, such that they could not possibly be made "to the best of

[Plaintiff's] knowledge, information, and belief"; (2) legally irrelevant to the alter ego analysis, such that the claim is not "warranted by existing law or by a nonfrivolous argument for extending of modifying existing law"; and/or (3) lacking evidentiary support and will not likely have evidentiary support. *See* Fed. R. Civ. P. 11(b). Plaintiff's First Amended Complaints, therefore, violate the standards set by Rule 11 in multiple respects.

ThermoLife's First Amended Complaints are utterly devoid of any allegations that could form the basis for the alter ego remedy with respect to either Hi-Tech and/or APS Nutrition (which ThermoLife contends are separate entities), and these circumstances were or should have been readily apparent to ThermoLife and its counsel. The utter lack of substance and coherency underlying the claims against Mr. Wheat in ThermoLife's Amended Complaints renders their filing unreasonable and evidently for the improper purposes of harassing Mr. Wheat, increasing his costs, imposing delay, and inappropriately attempting to prejudice him by getting the vacated and irrelevant sanctions Order before the Court. Thus, ThermoLife's refusal to dismiss Mr. Wheat as well as the new allegations against him are further demonstrative of ThermoLife and Mr. Kramer's bad faith.

Under these circumstances, Plaintiff's attempt to include Mr. Wheat in this litigation is nothing more than a legally improper demonstration of Mr. Kramer's

bad faith and personal animus towards Mr. Wheat, consistent with his previous

patent infringement actions against Hi-Tech and now familiar internet postings:

> [Hi-Tech owner and CEO] Jared Wheat (scum of the earth) … and quite
> a few others soon to be named are all going to get the legal equivalent
> of getting f****ed in the a** with a rusty pipe and then kicked in the
> face till their teeth are implanted in their skulls for stealing from
> ThermoLife. Mark my words.

Exh. E ThermoLife International Forums, Jan. 7, 2015, formerly available at
http://web.archive.org/liveweb/http://www.ThermoLife.com/forum/t2446-13/
(censorship added).  And:

> If you go big game hunting in Africa there is an argument whether the
> lion, the African elephant, the leopard, or the white rhinoceros is the
> biggest prize BUT if you are hunting scumbags in the dietary
> supplement industry there is no mistake who has that title. No, it is not
> Jack Owack, its not even Rich Gaspari (now that he had his company
> taken from him he is not even relevant), the title of the biggest scum
> bag in the dietary supplement industry belongs to Jared Wheat of Hi-
> Tech Pharmaceuticals …

Exh. F (formerly available on ThermoLife International Forums, March 30, 2015);

Exh. G available at http://www.thermolife.com/news/articles/thermolife.php (last

accessed August 27, 2015) (identifying "Ron Kramer as "The Truth Speaker").

Thus, the First Amended Complaints are unmistakably for "improper

purpose[s], such as to harass, cause unnecessary delay, or needlessly increase the

cost of litigation," yet additional violations of Rule 11.[16]   Plaintiff and Mr. Kramer should not be permitted to frivolously and maliciously pursue Mr. Wheat in the current patent infringement suits by disregarding well-established facts, alter ego law, and Rule 11's requirements, and this Court should impose sanctions against Plaintiff and its attorneys for repeatedly attempting to do so.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find that Plaintiff and its counsel violated Rule 11 and impose sanctions by requiring them to pay the legal fees incurred with Rule 11 matters as well as the legal fees which will be incurred in filing a dispositive motion to have Mr. Wheat dismissed, in addition to the cost to prepare and file additional Answers on behalf of all Defendants, and any other relief the Court deems just and proper.   Defendants further request that the sanction be imposed jointly upon Plaintiff, Mr. Kramer, and the responsible attorneys.

Dated: November 2, 2015

S/ Edmund J. Novotny
Edmund J. Novotny, Jr.
Georgia Bar No. 547338
Charles R. Bridgers
Georgia Bar No. 080791

---

[16] *See e.g.* Ron Kramer's blog post celebrating the significant attorney fees incurred by one of his other defendants, attached hereto as Exh. H.

*Counsel for Plaintiff Hi-Tech
Pharmaceuticals, Inc. and Jared
Wheat*

101 Marietta Street
Suite 3100
Atlanta, Georgia 30303
Tel: 404-979-3150
Fax: 404-979-3170
ednovotny@novotnylawgroup.com

S/Arthur W. Leach
Arthur W. Leach
Georgia Bar No. 442025
C.L. Parker
Georgia Bar No. 722011
*Counsel for Plaintiff Hi-Tech
Pharmaceuticals, Inc., and Jared
Wheat*

The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
Tel: 404-786-6443
Fax: 678-624-9852
Art@ArthurWLeach.com
CL@clparkerllc.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to L.R. 5.1C and 7.1D of the Northern District of Georgia, that the foregoing document complies with the font and point selections approved by the Court in L.R. 5.1C.  The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/ Arthur W. Leach*

Arthur W. Leach
Ga. Bar No. 442025
C.L. Parker
Ga. Bar No. 722011
The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
Telephone: (404) 786-6443
Facsimile: (678) 624-9852
Art@ArthurWLeach.com
CL@clparkerllc.com

*Attorneys for Defendant Hi-Tech
Pharmaceuticals, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 2nd day of November 2015, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

*/s/ Arthur W. Leach*
Arthur W. Leach
Ga. Bar No. 442025
C.L. Parker
Ga. Bar No. 722011
The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
Telephone: (404) 786-6443
Facsimile: (678) 624-9852
Art@ArthurWLeach.com
CL@clparkerllc.com

*Attorneys for Defendant Hi-Tech*
*Pharmaceuticals, Inc.*

1